TODD ANDREW SPODEK, ESQ.
NY Reg. #4489399
Spodek Law Group P.C.
The Woolworth Building
233 Broadway, Suite 710
New York, NY 10279
Telephone: (212) 300-5196
Email: ts@spodeklawgroup.com

Attorney for Defendant
CEMHAN "JIMMY" BIRICIK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff

CEMHAN "JIMMY" BIRICIK,
DR MARTIN PERLIN

    Defendant.
_____/

Case Number: 5:25-cr-20543

<u>CEMHAN "JIMMY" BIRICIK'S APPLICATION FOR REVOCATION OR AMENDMENT TO ORDER GRANTING GOVERNMENT'S MOTION FOR PRETRIAL DETENTION, AND TO REOPEN DETENTION HEARING AFTER DETERMINATION BY JUDICIAL OFFICER PURSUANT TO 18 U.S.C. §§ 3142(b) AND (f)(2), AND REQUEST FOR HEARING</u>

**COMES NOW,** the Defendant, CEMHAN BIRICIK, by and through his undersigned attorney**,** and, pursuant to 18 U.S.C. §§ 3142(b) and (f)(2), respectfully requests that this Honorable Court revoke or amend the Magistrate's August 1, 2025 Order granting the Government's Motion for Pretrial Detention, or reopen the detention hearing after determination by judicial officer, and as grounds in support of this request, MR. BIRICIK states that:

<u>**ARGUMENT**</u>

Mr. Biricik is currently charged with one count each of conspiracy to commit health care (Medicare) fraud, and committing or attempting to commit health care (Medicare) fraud. *See*

1

Doc. 1, *United States v. Biricik*, Case No. 1:25-mj-28, N.D. Fla.[1] On August 1, 2025, the Magistrate entered her Order granting the Government's motion for pretrial detention on August 1, 2025 (*See* Doc. 9).

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.
>
> 18 USC § 3145(b).

A District Court's review of a Magistrate's Order regarding pretrial detention is de novo. *See United States v. Delker*, 757 F.2d 1390, 1395 (3d Cir. 1985); *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release."); *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc) (stating that district court's review of magistrate judge's order setting bond was de novo).

A defendant cannot be detained pending trial unless the court finds that no conditions, or combination of conditions, will reasonably assure the appearance of the person and the safety of the community. *United States v. Bustamante-Conchas*, 557 F. App'x 803 at 5 (10th Cir. 2014) (citing 18 U.S.C. § 3142). Generally, courts apply a presumption in favor of pretrial release. *Id.* (citing 18 USC § 3142(b)).

Under 18 USC § 3145(a), a person accused of a crime shall either be released on personal recognizance or upon execution of an unsecured appearance bond, under 18 USC § 3145(b) (*see* 18 USC § 3145(a)(1)); released on a condition or combination of conditions under subsection 18

---

[1] References to 'Doc. __' are to filings in the earlier proceedings before the Hon. Midori Lowry in the Northern District of Florida, Case No. 1:25-mj-28.

USC § 3145(c) (*see* 18 USC § 3145(a)(2)); be temporarily detained to permit revocation of conditional release, deportation, or exclusion under 18 USC § 3145(d) (*see* 18 USC § 3145(a)(3)); or detained under 18 USC § 3145(e) (*see* 18 USC § 3145(a)(4)).

Pursuant to 18 USC § 3142(f)(2), a detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 USC § 3142(f)(2).

Parenthetically, since entry of the Magistrate's Order, Mr. Biricik hired the undersigned counsel who has learned of facts and received information that materially bear on the issue, whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community, but which was difficult to relay to the Magistrate due to Mr. Biricik's incarceration and the limited time his previous counsel had to prepare for and present evidence at the hearing on the Government's motion for pretrial detention. With this additional information, Mr. Biricik can now better answer the Court's concerns regarding detention.

In the instant case, the Magistrate concluded that Mr. Biricik should be detained "because the Government showed by a preponderance of the evidence that there is a serious risk that Defendant will flee (18 U.S.C. § 3142(f)(2)(A)) and that no conditions or combinations of conditions will reasonably assure his presence as required (18 U.S.C. § 3142(e)(1))" (Doc. 9, p. 1).

None of the presumptions enumerated in 18 USC §§ 3142(e)(2) or (3) applied, the

Magistrate found that Mr. Biricik did not pose "a clear and convincing danger to the community that cannot be attenuated by conditions;" Mr. Biricik "does not have a criminal history;" "there is no indication of substance abuse;" and he has "strong ties to Florida," having lived here "since age 4," and currently living here with his wife, three children, and his mother. *See* Doc. 9, pgs. 3-4. Mr. Biricik resides in New Jersey until he was approximately 14 years old, and moved to Florida with his family in 2011.

Instead, the Magistrate concluded that nothing short of incarceration can assure that Mr. Biricik won't flee the country because, given the seriousness and strength of the case, Mr. Biricik is motivated to flee (*See* Doc. 9, pgs. 1-3); since $40 million in funds attributed to Mr. Biricik is currently unaccounted for, he has the financial means to flee (*See* Doc. 9, p. 2); since his father and an aunt live in Turkey, he has significant ties to that country (*Id.*); he had plans to visit the aunt who, the Government alleged is ill (*Id.*); Mr. Biricik has traveled internationally, is a student pilot, is familiar with private jet travel, and has a private jet. *Id*.

According to the Magistrate's Order, putting an electronic monitor on Mr. Biricik wouldn't work because he could simply cut it off (*Id*. at 4) (though neither the Magistrate nor the government addressed the fact that if Mr. Biricik were to succeed in cutting off his GPS monitor, authorities would be notified immediately) (*see Bustamante-Conchas*, 557 F. App'x 803 at 8); surrendering his passport wouldn't be effective since he could get a fraudulent passport; (*Id.*) (neither the Government nor the Magistrate explained how, logistically, Mr. Biricik would do that, nor were the practical difficulties in securing a fraudulent passport, and the sophisticated abilities of border agents and the TSA in detecting fraudulent passports addressed); Mr. Biricik's familiarity with international travel would make it easy for him to travel outside the U.S. (*Id*. at 4-5) (though Mr. Biricik may have some familiarity with

4

traveling outside the U.S., neither the Magistrate nor the Government addressed the impossibility of doing that without a passport while on electronic monitoring); and extradition from many places, including Turkey, "can be difficult or impossible." *Id*. at 5. This conclusion will be addressed in depth later in this Motion.

The Supreme Court has held that pretrial detention is disfavored. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). In *Salerno*, the Supreme Court ultimately approved pretrial detention based on dangerousness (Salerno was a "boss" of the Genovese crime family which was notorious for, among other things, using violence, including murder, against witnesses), but the Court was clear that the Bail Reform Act is preventative, rather than punitive, in nature. *Id*. at 747–48, 107 S.Ct. 2095. Consistent with the Supreme Court's holding, the Bail Reform Act states that nothing in it "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. § 3142(b), (c). A judicial officer may make such a finding only after holding a hearing according to the procedures specified in § 3142(f), and the government bears the burden of proof at that hearing. The government must prove risk of flight by a preponderance of the evidence, see *U.S. v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (per curiam); *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990), and it must prove dangerousness to any other person or to the community by clear and convincing evidence, 18 U.S.C. § 3142(f).

5

Courts must be mindful of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons. *Motamedi*, 767 F.2d at 1407 (citing *Truong Dinh Hung v. United States*, 439 U.S. 1326, 1329 (1978); *Harris v. United States*, 404 U.S. 1232, 1232 (1971); *Sellers v. United States*, 89 S.Ct. 36, 38 (1968)).

Even if a *presumption* under 18 USC § 3142(e) that no conditions can assure his appearance in court and the safety of the community were applicable here (which it is not), the presumption could, and would, be overcome by Mr. Biricik's producing evidence of his lack of criminal history, his status as a citizen of the U.S., and his family ties to the U.S. *See Bustamante-Conchas*, 557 F. App'x 803 at 6 (citing *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991) ("The defendant's burden of production is not heavy, but some evidence must be produced.").

Section 3142(g) specifies the various factors to be considered by the court in determining whether conditions of release may be imposed that will reasonably assure the appearance of the person. The court must take into account available information concerning the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id*. (citing 18 U.S.C. Sec. 3142(g)).

As reflected in the Pretrial Services Report prepared in the Northern District of Florida (*United States v. Biricik*, Case No. 1:25-mj-28, N.D. Fla.), the defendant declined to

be interviewed without counsel present. As a result, the report lacks critical information about his background, community ties, family support, employment history, and health. Defendant respectfully requests that Pretrial Services be directed to promptly conduct a full interview with counsel present so the Court has a complete and accurate record under 18 U.S.C. § 3142(g).

## I. Mr. Biricik Does Not Pose a Risk of Flight

Like the defendant in *Motamedi*, there are many factors listed in section 3142(g) which point toward the conclusion that Biricik should be released. As for flight, concerns with respect to flight are ameliorated by a defendant who has strong ties to the local community. *See United States v. Davis*, 449 F. Supp. 3d 532, 540 (D. Md. 2020). Mr. Biricik is a United States citizen; with the exception of his father, who lives as a shut-in hermit in Turkey, his entire family – his wife, his three children, his mother, and his aunt and her family all reside in the United States. The Magistrate was concerned that Mr. Biricik was to "fly to Turkey next week to visit with his aunt, who is gravely ill," (*See* Doc. 9, p. 2) which raised, perhaps, the inference that his aunt resided in Turkey when, in fact, she does not. Rather, she was in Turkey to receive cancer treatment and to be buried next to her father if she passed away, in which case, she certainly would not be a family member on which Mr. Biricik could depend, to any extent, to stay in Turkey. Moreover, as noted earlier in this Motion, Mr. Biricik's father is a hermit – hardly the type of person who would be providing succor to Mr. Biricik, or a reason for him to stay in Turkey.

Regarding his experience traveling internationally, contrary to the Magistrate's finding (*See* Doc. 9, p. 2), Mr. Biricik has never traveled to Singapore; moreover, all of Mr. Biricik's trips outside the United States have been on family vacations when the children

7

were off from school, and the family returned from all of those vacations.

Though the Order also adverts to Mr. Biricik and his wife being student pilots (*See* Doc. 9, p. 2), there is no evidence that either of them has the type of license, flying experience, or access to aircraft which would allow them to fly from the United States to Turkey – the destination which the Order asserts Mr. Biricik would flee to. Beyond the reference that Mr. Biricik is a student pilot, there is no evidence that he has soloed, has the flight hours, the experience the proficiency in Instrument Flight Rules, or the airmanship which would enable him to undertake, or survive, the almost 6,000-mile flight across vast stretches of water and land, over numerous countries' airspace, and through all kinds of weather from Florida to Turkey. Even assuming the impossible - Mr. Biricik's technical ability to make that flight – there is no evidence that he has access to, or the ability to afford to fly the type of aircraft capable of making such a flight. Though the Magistrate's Order says that Mr. Biricik has a "private jet," (*See* Doc. 9, p. 2), that is inaccurate; rather, Mr. Biricik owned a small single propeller airplane (a Cirrus SR22T) which has been seized by the Government, and is utterly incapable of flying to Turkey.

In summary, the Magistrate's conclusion that Mr. Biricik's being a student pilot who owned a private jet, has travelled internationally, and whose father and aunt live in Turkey, make him a substantial flight risk, is highly speculative, partly inaccurate, and is unsupported by the practical facts.

The Magistrate's conclusion that if Mr. Biricik somehow made his way to Turkey, extradition would be very difficult or impossible (*See* Doc. 9, p. 5) is, likewise, speculative and unsupported by the facts. Turkey and the United States have a long-standing bilateral extradition treaty which was signed in 1979 and ratified in 1980. *See* The Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States and Turkey, U.S.-Turk, June 07, 1978,

8

32 U.S.T. 3111; *see also* "The Process Behind Turkey's Proposed Extradition of Fethullah Gulen."[2] The Treaty, approved by the United States Senate, is a formal treaty, not an executive agreement and is a rare composite agreement that covers not only extradition but also establishes rules on mutual criminal assistance. *See Id.* The criminal conduct that the United States is accusing Mr. Biricik of must also qualify for criminal prosecution and imprisonment of at least one year under Turkish law in order to meet the requirements of the treaty. *See Id.* at Art. 2(1)(a). The treaty includes "attempted" crimes and "conspiracy" to commit certain crimes. *Id* at Art. 2(3)(a); Art. 2(3)(b). Also, "When a request for extradition comprises several separate offenses and extradition has been granted for one of the extraditable offenses, it shall also be granted for other extraditable offenses which could not otherwise fulfill the requirements of paragraphs (1) and (2) above as related to the deprivation of liberty to be served or duration of the penalty to be enforced in the Requesting Party." *See Id.* at Art. 2(4).

      Mr. Biricik is charged with one count each of conspiracy to commit health care (Medicare) fraud, and committing or attempting to commit health care (Medicare) fraud. Health care fraud is a criminal offense in Turkey. Specifically, white-collar crime in Turkey is regulated under various legal frameworks, primarily through the Turkish Penal Code (TPC) No. 5237, as well as other legislative instruments such as the Turkish Commercial Code, Capital Markets Law, Banking Law, and Anti-Money Laundering (AML) Law. *See* "Guide to White Collar-Crime Law in Turkey."[3] These laws define, categorize, and prescribe penalties for financial crimes, corruption, and regulatory violations. White-collar crime in Turkey encompasses offenses

---

[2] https://www.americanprogress.org/article/the-process-behind-turkeys-proposed-extradition-of-fethullah-gulen/#:~:text=The%20United%20States%20and%20Turkey,a%20military%20coup%20in%20Turkey; Treaty on Extradition and Mutual Assistance in Criminal Matters Between the United States of America and the Republic of Turkey, https://internationalextraditionblog.wordpress.com/wp-content/uploads/2011/03/turkey.pdf.

[3] https://www.bicakhukuk.com/en/guide-to-white-collar-crime-law-in-turkey/#:~:text=White%2Dcollar%20crime%20in%20Turkey,face%20imprisonment%20and%20restitution%20obligations.

committed in both public and private sectors, affecting financial stability, public trust, and economic development. *Id*. More specifically, several offenses falling under the umbrella of white-collar crime are explicitly defined and penalized within the Turkish Penal Code (TPC) No. 5237. *Id*. These include:

Fraud (Dolandırıcılık) is regulated under Article 157, which criminalizes obtaining unlawful benefits through deception. Aggravated fraud under Article 158 applies to cases involving public institutions, banks, insurance companies, and vulnerable individuals, with stricter penalties. *Id*.

Embezzlement (Zimmet Suçu), under Article 247, criminalizes public officials who misappropriate funds or assets entrusted to them. Those found guilty face imprisonment and restitution obligations. *Id*.

The penalty for fraud in Turkey is imprisonment from one to five years, and a judicial fine. See "Fraudulent Activities and Turkish Criminal Code: An Overview."[4] The penalty can be increased if the fraud is committed by using a public duty, a false document, or a false identity, or if the fraud causes serious damage or affects many people. *Id*.

Based on the foregoing, *if* Mr. Biricik fled to Turkey, he would be subject to extradition under the bi-lateral extradition treaty between the United States and Turkey. Most importantly, there is no evidence that, given the fact that the crimes Mr. Biricik is charged with here are also crimes in Turkey, there is no basis to conclude that extradition would be very difficult or impossible.

There is also the matter of Mr. Biricik's being unable to support himself should he flee to Turkey, or another country. He has no bank accounts outside the U.S. to access funds

---

[4] https://alfalawfirm.com/fraudulent-activities-turkish-criminal-code-an-overview/#:~:text=The%20penalty%20for%20 20fraud%20is,damage%20or%20affects%20many%20people.

from, and, since he does not own any real or personal property out of the country, he would not be able to liquidate any assets and so support himself in another country. Even if he wanted to liquidate his real and personal assets held in the United States, he couldn't do so because the Government is seeking forfeiture of *all* of Mr. Biricik's assets. (See Doc. 1, pgs. 24-25).

Further undermining any concern that Mr. Biricik will flee, is the fact that he has not attempted to flee, made plans to flee, or fled even though he has known for a while that he has been the target of a federal investigation. Indeed, prior to issuance of the indictment in this case, Mr. Biricik was stopped at the airport by Customs and Border Patrol and they interviewed him and went through his phone asking various questions about his ties outside of the United States, and was aware that P Verify and Pandemic Response Lab had been contacted by the DOJ regarding conduct which has led to the instant charges.

Based on the foregoing, there is not a preponderance of evidence that Mr. Biricik poses a risk of flight.

## II. Mr. Biricik Does Not Pose a Danger to the Community

Mr. Biricik is 46 years old and, as noted by the Magistrate, has lived in the United States since he was 4. (Doc. 9, p. 4). The government concedes he has no criminal record; in fact, he has never even been accused of a single criminal act.

The Court must take into consideration whether Mr. Biricik himself poses a danger to the community such that releasing him would be more dangerous than keeping him detained. *See Davis*, 449 F. Supp.3d at 539. Rare is the case in which there will be no evidence of danger to the community based on alleged criminal conduct. *Id*. The plain language of the statute requires the Court to evaluate the "nature and seriousness of the danger." *Id*. (quoting

18 USC § 3142(g)(4)). This language makes clear that there are different types of dangers and varying levels of seriousness. *Id*. Selling narcotics, for example, is different from identity theft, which is different from carjacking. *Id*. Having identified the specific nature of the danger and how serious it is, the Court then must consider available release conditions that will address those concerns and "reasonably assure" the safety of the community. The statute requires "reasonable assurance," not a "guarantee." *Id*. (quoting *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985)).

Given the speculative nature of the Magistrate's conclusions as described earlier in this Motion, it may be reasonably inferred that the primary reason why the Government's motion for pretrial detention was granted was because of the severity of the allegations against Mr. Biricik, the dollar amount of the alleged crime(s), in particular. Regarding that matter, a District Court must reject the Government's argument that implies guilt, as it is strictly prohibited by the Bail Reform Act. See 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence"). Furthermore, the "weight of the evidence is the least important of the various factors." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985); even in a presumption case, the Bail Reform Act contains a "least restrictive conditions requirement." 18 U.S.C. § 3142(c)(1)).

Given the financial nature of the allegations against Mr. Biricik, the danger which he posed was *financial*. That danger has been eliminated. Mr. Biricik's businesses have been shut down, his bank accounts frozen, and all of his assets are subject to forfeiture. The Government referenced foreign transactions; however, all of those were purely minor business transactions. Furthermore, his businesses have been effectively shut down by the Government, so there is no ongoing danger to the public or the Government.

Legally and practically, he cannot engage in the type of business which gave rise to the current charges against him. Consequently, the evidence of dangerousness is not clear and convincing.

There is also the fact that the danger of pretrial detention is greater than the danger posed by Mr. Biricik's release. Mr. Biricik suffers from asthma. Asthma, in particular, poses a danger of death should Mr. Biricik suffer an asthma attack that is not immediately addressed – a legitimate concern when someone is incarcerated, particularly at the County level. It is also important to note the risk of spoliation of evidence associated with pretrial detention: the risk is accentuated because witnesses and vendors who are in possession of evidence germane to this case, including evidence that may be beneficial to the defense, are not being paid; consequently, they lack any motive or incentive to preserve such evidence.

### III.  *Statement Regarding Attorney Conference*

There was a conference between attorneys in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought;

Mr. Biricik does not need the services of an interpreter for the hearing on this motion.

WHEREFORE, the Defendant, CEMHAN BIRICIK, respectfully requests this Honorable Court revoke or amend the Magistrate's Order granting the Government's Motion for Pretrial Detention, or reopen the detention hearing and enter its Order granting pretrial release upon reasonable conditions, including bond, electronic monitoring, personal supervision, home confinement, and any other conditions the District Judge finds is appropriate to assure Mr. Biricik's appearance at future proceedings and to protect individuals and the community.

I HEREBY CERTIFY that on the 1st day of October 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the all counsel of record.

                                                           s/ Todd Andrew Spodek

                                                           _____
                                                           TODD ANDREW SPODEK, ESQ.
                                                           NY Reg. #4489399
                                                           Spodek Law Group P.C.
                                                           The Woolworth Building
                                                           233 Broadway, Suite 710
                                                           New York, NY 10279
                                                           Telephone: (212) 300-5196
                                                           Email: ts@spodeklawgroup.com

        Attorney for Defendant
        CEMHAN BIRICIK

cc:    All Counsel of Record (By ECF).